UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                       Plaintiff,                      Case Number 94-80346

v.                                               Honorable David M. Lawson

JERRY EUGENE GONYEA,

                       Defendant.

_____/

## **ORDER DENYING MOTION TO REDUCE SENTENCE**

Defendant Jerry Gonyea has filed a motion asking the Court to reduce his sentence under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239.  Gonyea has been in custody since the Honorable Avern Cohn sentenced him in 1996 to a 351-month prison term for robbery and firearm offenses.  Some of that prison time is referable to an intervening state court sentence.  Gonyea argues that a sentence reduction is justified by his age (73 years old), his "semi-ambulatory" condition, and his medical conditions (hypertension and diabetes) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting.  The government concedes that Gonyea's medical conditions amount to extraordinary and compelling reasons for release, but it maintains that he would be a threat to public safety if he were set free.  Although Gonyea's medical ailments coupled with the threat of a COVID-19 infection may amount to "extraordinary and compelling reasons [to] warrant such a reduction," as section 3582(c)(1)(A)(i) requires, consideration of the factors in 18 U.S.C. § 3553(a) do not favor early release.  Because Gonyea has not demonstrated that immediate release is appropriate or that he qualifies for release under any other provision of section 3582(c)(1), the motion will be denied.

I.

Defendant Jerry Eugene Gonyea pleaded guilty to two counts of bank robbery and two counts of carrying a firearm during a crime of violence.  On September 24, 1996, Judge Cohn sentenced him to concurrent prison terms of 51 months each on the bank robbery counts, a consecutive mandatory term of 60 months for one of the gun counts, and a further enhanced consecutive term of 240 months on the other gun charge, totaling 351 months in prison.

The parties disagree about how much of the cumulative 351-month federal term the defendant has served.  Although he was sentenced in September 1996, the government asserts that the defendant was transferred to state custody to serve a separate sentence on unrelated state crimes.  It calculates the date when his federal custodial term commenced as December 4, 2005, which is a starting point that the Bureau of Prisons (BOP) determined upon his return to federal custody on August 20, 2009, taking into account other time during which he was in federal detention.  The government represents, therefore, that the defendant has served approximately 185 months or around 52% of his federal sentence.  The defendant reckons his time in federal prison by more straightforward arithmetic evidently starting from when was detained by federal authorities to the present, and he asserts accordingly that he has served a bit more than 26 years of federal time or around 89% of his federal sentence.  The BOP forecasts that Gonyea will be released on December 17, 2030, and he presently resides in federal custody at FCI Greenville, in Greenville, Illinois, a medium security facility that houses around 1,200 inmates.

On March 1, 2021, Gonyea filed through counsel his motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  In his motion, Gonyea argues that he is qualified for release based on medical risk factors including his age (73), his

"semi-ambulatory" condition, and diagnoses with hypertension and diabetes.  The government filed an opposition supported by exhibits including prison disciplinary and medical records.

The most recent data disclosed by the BOP indicates that there are no active coronavirus cases among inmates or staff at the Greenville facility, although 690 inmates and 78 staff previously were diagnosed and now have recovered.  Reports indicate that no inmates have died.  *See* https://www.bop.gov/coronavirus/.  The BOP also recently began reporting data on the number of COVID-19 vaccinations that it has administered to staff and inmates.  At Greenville, the reports indicate that 153 staff and 772 inmates fully have been vaccinated.  Notably, the defendant's medical records disclose that he was offered a vaccination against COVID-19 on February 17, 2021, which he refused to take.

## II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'"  *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).  "But that rule comes with a few exceptions, one of which permits compassionate release."  *Ibid.*  "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).  Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'"  *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has

'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Gonyea relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for

reviewing . . . requests.'"  984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)).  It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20.  It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*  However, the defendant still must satisfy the other requirements, and his "failure to meet any one of those criteria" will result in the denial of his motion. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

## A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

## B.

Addressing the first element — extraordinary and compelling reasons — Gonyea argues that his age and medical conditions render him vulnerable to complications from the highly-contagious novel coronavirus.  In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put him at risk of contracting the virus)." *Jones*, 980 F.3d at 1102 n.6.  The government agrees that the defendant has established that has at least two cognizable risk factors based on his age and Type 2 diabetes, which could be found to present extraordinary medical risk factors.

In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6.  And the defendant is justifiably concerned about the health risks posed by his incarceration.  "The COVID-19 virus is highly infectious and can be transmitted easily from person to person.  COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise.  If contracted, COVID-19 can cause severe complications and death. . . .  [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020).  "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.  And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself.  For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at \*4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).  It is appropriate for the Court to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist.  *Elias*, 984 F.3d at 521.

The pandemic guidelines published by the CDC, which regularly have been updated over the past year with the benefit of ongoing research about the COVID-19 disease, recognize that a person's age and having certain medical conditions may elevate the risk of complications for anyone who is infected with the COVID-19 disease.  *See* CDC Risk Factors: People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021).  The CDC recently overhauled the presentation of its guidance about a range of medical conditions.  The newly revised guidance warns as a general matter that "[a]dults of any age with the following conditions can be more likely to get severely ill from COVID-19," and it explains that "[s]evere illness means that a person with COVID-19 may need: [h]ospitalization, [i]ntensive care, [a] ventilator to help them breathe, [o]r they may even die."  *Ibid.*  Among the listed conditions, the CDC advises that having Type 2 diabetes "can make you more likely to get severely ill from COVID-19."  Drilling down into the CDC's background for its taxonomy of risk factors, the agency further explains that it found the associational risk of diabetes to be supported by the most robust cadre of evidence featuring

"systematic review" and "meta-analysis."  *See* CDC: Evidence Used to Update the List of Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/underlying-evidence-table.html (updated May 12, 2021).

The current guidance unambiguously calls out a certain correlation with severe disease that increases with advanced age: "Older adults *are more likely* to get severely ill from COVID-19. More than 80% of COVID-19 deaths occur in people over age 65, and more than 95% of COVID-19 deaths occur in people older than 45."  CDC Risk Factors, *supra* (emphasis added).

The Court accepts the defendant's and the government's assertions at face value and assumes that he has established the existence of at least two recognized risk factors that may pose an extraordinary risk of severe consequences if he is infected with the coronavirus.  That does not end the analysis of whether extraordinary and compelling circumstances warrant his immediate release.  Another consideration is the possibility that the defendant may be exposed to the coronavirus in his present situation.  Recent reports indicate that the probability of infection at Greenville is lower than it once was.  However, the threat of infection has not been eliminated, and the defendant remains in a high-risk population exposed in the close quarters of a prison setting.  And although it is true that the likelihood of a severe outbreak further will diminish as the BOP's vaccination program proceeds, there is no guarantee that the defendant will not fall victim to a variant in his vulnerable condition.

It is noteworthy in this case that the defendant was offered a vaccination against the COVID-19 virus and declined.  The record does not contain an explanation for his choice.  The refusal of that prophylactic measure weighs against a finding that the pandemic may furnish an extraordinary reason for relief under the statute.  However, the threat of infection remains, Gonyea

is semi-ambulatory, and the Sentencing Commission has recognized that his advanced age as a factor favoring release. *See* U.S.S.G. § 1B1.12(1)(B).

Gonyea has established extraordinary and compelling reasons for the relief he seeks under 18 U.S.C. 3582(c)(1)(A)(i).

C.

Although the defendant has made a satisfactory showing of extraordinary and compelling medical risk, the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a).

There is no requirement that the prisoner must establish a lack of dangerousness, as is the case for compassionate release applications made by the BOP. *See* U.S.S.G. § 1B1.13; *Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."); *Elias*, 984 F.3d at 519-20 (same).

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Moreover, the Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed "to remain [] an accurate assessment as to whether those factors justify a

sentence reduction." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021).  The defendant, therefore, must "make a compelling case as to why the court's § 3553(a) analysis would be different if conducted today." *Ibid.*

Gonyea's crimes were serious and violent.  When denying Gonyea's motion for post-judgment relief, Judge Cohn wrote that Gonyea "brandished firearms and terrorized those present, including children, with death."  He was in his mid-40s when he committed those crimes, and he was on parole at the time for second-degree murder committed 18 years before that.  That conduct, plus the statutorily compelled mandatory and consecutive firearm sentence, earned him nearly 30 years in custody.  That sentence, no doubt, reflected Judge Cohn's determination of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law" under 18 U.S.C. § 3553(a).

It is true that Gonyea is considerably older now.  And empirical evidence from the United States Sentencing Commission has recognized that the rate of recidivism overall drops significantly with age.  However, as recently as two years ago, the BOP cited Gonyea with assaulting another inmate, which he denies.  More concerning is Gonyea's reluctance to comply with conventional norms instituted for the safety and welfare of himself and others in the close quarters of a prison setting.  For instance, he has refused the COVID-19 vaccine, which is his choice, but he also has refused at times to wear a mask as recommended.  He also has a history of refusing recommended insulin for his diabetes, although it appears from more recent records that he is in compliance with this medical prescription.  All of that reflects on the considerations surrounding protection of the public, which is one of the prime factors that must be considered. *See* 18 U.S.C. § 3553(a)(2)(C).

Gonyea has served a major portion of a long prison sentence.  However, releasing him now would hardly promote respect for the law, and it may undermine the goals of both specific and general deterrence, which is of particular concern with a defendant with violent tendencies who has demonstrated his disinclination to abide by society's rules of conduct.

III.

Gonyea has exhausted his administrative remedies.  However, he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion to reduce sentence (ECF No. 137) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  May 20, 2021